SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
    Including Professional Corporations
HAROLD J. MILSTEIN, Cal. Bar No. 145074
hmilstein@sheppardmullin.com
JAMES M. CHADWICK, Cal. Bar No. 157114
jchadwick@sheppardmullin.com
CHELSEAA BUSH, Cal. Bar No. 228771
cbush@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California  94301
Telephone:      650-815-2600
Facsimile:      650-815-2601

Attorneys for Plaintiff
ALIGN TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., a Delaware corporation, | Case No. 5:15-cv-03450 |
| | **COMPLAINT FOR UNFAIR COMPETITION AND FALSE ENDORSEMENT; TRADEMARK INFRINGEMENT; AND TRADEMARK DILUTION** |
| Plaintiff, | |
| v. | |
| RADIO FREQUENCY SYSTEMS FRANCE, a French Société par actions simplifiée, and RADIO FREQUENCY SYSTEMS, INC., a Delaware corporation, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Align Technology, Inc. ("Align") alleges the following:

**NATURE OF THE CASE**

1.      This is an action seeking damages and injunctive relief for (1) unfair competition and false endorsement (15 U.S.C. §§ 1114(1), 1125(a)); (2) trademark infringement (15 U.S.C. §§ 1114(1), 1125(a)); and (3) trademark dilution (15 U.S.C. § 1125(c)).

**THE PARTIES**

2.      Align is a Delaware corporation with a place of business at 2560 Orchard Parkway, San Jose, California 95131.  Align is the owner of the famous trademark INVISALIGN®, which it uses in connection with its well-known dental and orthodontic goods and services and its computer digital imaging and scanning software.

3.      Radio Frequency Systems France is a French Société par actions simplifiée with a place of business at 32 Avenue Kléber F-92700, Colombes, France.  Radio Frequency Systems France does business in the United States through Radio Frequency Systems, Inc., a Delaware corporation, with a place of business at 200 Pondview Drive, Meriden, Connecticut 06450 and a technical support and sales office in San Jose, California.  Radio Frequency Systems France and Radio Frequency Systems, Inc. are collectively referred to as "Defendants."  Defendants have recently adopted the trademark INVISILINE for use in connection with their new line of antennas.

**JURISDICTION AND VENUE**

4.      The causes of action in the Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*.  This Court has original subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district because: (a) Radio Frequency Systems, Inc., has been registered to do business with the California Secretary of State since 1990; (b) Defendants are actively conducting business in California and have technical support and sales offices in this judicial district; (c) Defendants have purposefully availed themselves of the privilege of conducting business in California; (d) the harm caused to Plaintiff by the acts and omissions of Defendants was targeted by Defendants at Plaintiff and designed to impact Plaintiff, which has its principal

1   place of business located in this judicial district; and (e) a substantial part of the acts or omissions

2   giving rise to the asserted claims occurred or had effects in this judicial district.

3       6.      Assignment to the San Jose Division of the Court is proper pursuant to Civil Local

4   Rule 3-2(c) because a substantial part of the events or omissions giving rise to the claims alleged

5   occurred or had effects in Santa Clara County, California.

6                                   **FACTUAL BACKGROUND**

7   **Align's Business And Marks**

8       7.      Align is a pioneer in the field of orthodontics and digital dental scanning and

9   simulation software.  Align invented, developed, patented, and introduced the first mass-produced

10  customized clear teeth aligner therapy under the trademark INVISALIGN®.  In fact, Align

11  singlehandedly revolutionized the manner in which patients straighten their teeth and started the

12  now billion dollar industry for clear aligners as an alternative to wire braces.  The INVISALIGN

13  system has grown into the world's leading orthodontic product, consisting of a combination of

14  proprietary 3D modeling software, cutting edge custom manufacturing technology, and clear,

15  removable dental appliances that are used to straighten teeth and treat other malocclusions, either

16  as comprehensive orthodontic treatment or as a component of other dental work.

17      8.      Align was founded in 1997 and began using the INVISALIGN trademark in

18  interstate commerce in connection with clear orthodontic appliances no later than  September

19  1999.  Align has continuously used the INVISALIGN trademarks in interstate commerce in

20  connection with its products and services since that time.

21      9.      Align owns the following United States trademark registrations for INVISALIGN:

22

| Mark | Registration No. | Registration Date: |
|------|------------------|--------------------|
| INVISALIGN | 2,409,473* | November 28, 2000 |
| INVISALIGN | 3,060,471* | February 21, 2006 |
| INVISALIGN | 3,191,195* | January 2, 2007 |
| INVISALIGN | 3,418,121* | April 29, 2008 |
| INVISALIGN | 4,025,403 | September 13, 2011 |

28

| | | |
|---|---|---|
| INVISALIGN TEEN | 3,627,894 | May 26, 2009 |
| INVISALIGN TEEN & Design | 3,661,970 | July 28, 2009 |
| INVISALIGN ASSIST | 3,734,867 | January 5, 2010 |
| INVISALIGN & Design | 3,911,988 | January 25, 2011 |

True and correct copies of the trademark registration certificates for the above listed trademarks are attached as **Exhibit A** to this Complaint.

10.     Align's registrations listed above are valid, subsisting, and in full force and effect. Several are also incontestable (as indicated above with an asterisk * alongside the Registration No.) pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serve as conclusive evidence of the validity of Align's INVISALIGN marks, pursuant to 15 U.S.C. § 1115(b).

11.     The INVISALIGN trademark is fanciful and therefore inherently distinctive.

12.     The INVISALIGN trademark is also famous and widely recognized by the general consuming public of the United States.  Millions of consumers in the general public and their children seek orthodontic treatment each year and INVISALIGN has been a leading treatment option since its inception over fifteen years ago.  The INVISALIGN trademark became famous long before Defendants adopted and filed a trademark application for INVISILINE.

13.     Align works with doctors, dentists, and orthodontists in every region of the United States and in over 80 countries around the world to provide its INVISALIGN products and services.  Since 1998, approximately 80% of the orthodontists in the United States have been trained in the use of the INVISALIGN system.  This means that dentist and orthodontist offices all over the country have been promoting INVISALIGN to their patients and have had INVISALIGN brochures and other marketing collateral featured in their offices for years.

14.     In fact, by the end of 2001, Align had already manufactured approximately 1 million clear aligners and its popularity only skyrocketed from there.  By October 2007, Align produced its 30 millionth clear aligner, and by April 2009, Align had treated its one millionth customer.  Currently, Align has trained more than 96,000 dentists and orthodontists in its INVISALIGN technology, started over 3 million patients in its INVISALIGN treatment, and manufactured more than 177 million unique INVISALIGN aligners.  In sum, clear aligners have

become a mainstream dental and orthodontic treatment option and INVISALIGN is the market leader in the field.

15.    Because it is so effective and in such high demand, the INVISALIGN system has now been integrated into the standard curriculum in over 50 university orthodontic and dental programs throughout the United States, including leading universities such as the University of Michigan, University of California Los Angeles, University of North Carolina, New York University School of Dentistry, University of the Pacific, UCSF School of Dentistry, University of Chicago, and the University of Connecticut.

16.    In each year since 2008, Align has made hundreds of millions of dollars in revenue from its products and services offered under the INVISALIGN trademark.  By 2013, when Defendants first filed for the INVISILINE mark, Align had already made billions of dollars from sales of its INVISALIGN system.  The remarkable level of sales and popularity of INVISALIGN have quickly turned it into a household name.

17.    The INVISALIGN trademark has also become famous by virtue of Align's extensive advertising of the trademark over the last decade.  In that time, Align has spent an enormous amount in advertising INVISALIGN throughout every state and region of the United States and throughout the world.  In fact, Align has spent over $800 million dollars on advertising INVISALIGN in just the five years preceding Defendants' first filing for INVISILINE in 2013.

18.    INVISALIGN has also been featured repeatedly in nationally syndicated, major news and lifestyle publications, including InStyle Magazine,  Marie Claire, The New York Times, USA Today, Lucky Magazine, New Beauty Magazine, US Magazine, and Bridal Guide, just to name a few.  INVISALIGN has also been featured in nationally-syndicated television programs, such as the CBS national morning show *The Doctors, The Tyra Banks Show,* and *The Balancing Act* on the Lifetime channel.  In addition, INVISALIGN has been the official sponsor of several television and concert events, including Radio Disney's Next Big Thing's national talent search and concert tour, and the 2011 Teen Choice Awards that aired on Fox Networks, reaching millions of viewers all over the country.  INVISALIGN also has several celebrity ambassadors such as teen star Coco Jones, Zendaya from *Dancing with the Stars*, German soccer champion Matthias

Sammer, and Australian professional snowboarder Torah Bright.  INVISALIGN has also been highlighted in the media as the teeth-straightening choice of numerous celebrities that include Khloe Kardashian, Justin Bieber, Tom Cruise, Eva Longoria, Katherine Heigl, Gisele Bundchen, and Zac Efron.

19.     INVISALIGN is also heavily advertised through social media.  As of 2013, the INVISALIGN Twitter account has had more than 185 million Twitter impressions, that is, tweets sent that actually generated interaction or replies from its Twitter followers.  Align also has INVISALIGN YouTube Channels that have thousands of followers and a number of the INVISALIGN videos on YouTube have received hundreds of thousands to over a million views each.  In addition, Align has maintained a Facebook page featuring INVISALIGN that has garnered more than one hundred thousand "likes."

20.     Align also provides extensive information on its products and services for dentists and consumers at <invisalign.com>, including how the INVISALIGN systems works, success stories, reasons for choosing INVISALIGN, and how to find an INVISALIGN provider.  Align registered <invisalign.com> in 1999, long before Defendants adopted INVISILINE.  Between 2013 and 2014 alone, over 4.5 million people visited the <invisalign.com> website.  Over 400,000 people search for an INVISALIGN provider each year on the <invisalign.com> website.

21.     In summary, Align has made billions of dollars of sales under the INVISALIGN trademark.  Millions of consumers have engaged with or been exposed to the INVISALIGN trademark through social media, through the <invisalign.com> website, and through the promotional materials located in thousands of dentist and orthodontist offices throughout the country.  Align has spent hundreds of millions of dollars in advertising INVISALIGN in virtually every available medium and in every region of the country.  As a result, INVISALIGN is famous and widely recognized by the general consuming public of the United States as identifying Align's products and services.  This fame was established long before Defendants began the wrongful activity alleged herein.

**Defendants' Unlawful Conduct**

22.     On information and belief, Defendants produce cable and antenna systems and other wireless and broadcasting infrastructure products and solutions.  Defendants' products are used by OEMS, distributors, system integrators, operators, and installers in various sectors, including broadcast and wireless communications, land-mobile, and the microwave market sectors.

23.     In connection with one of its new antenna products, Defendants have adopted the trademark INVISILINE.  Radio Frequency Systems France has even filed a trademark application for INVISILINE with U.S.  Application Serial No. 79/149929 for "telecommunication antennas."  The United States trademark application was filed on May 30, 2014 based on Section 66(a), Madrid Protocol-based registration.  The U.S. application claims a priority date of December 3, 2013.  Align has filed a Trademark Trial and Appeal Board Opposition against this application which  opposition is currently pending.

24.     Defendants issued a press release on May 5, 2015, introducing the launch of their smallest microwave antenna as part of their INVISILINE product family.  Attached hereto as **Exhibit B** is a true and correct copy of Defendants' May 5, 2015 press release.

25.     Defendants have never been authorized by Align to use INVISALIGN, INVISILINE, or any variations thereof, and have never been granted authority to assert or suggest any affiliation with or endorsement by Align.

26.     Defendants' mark INVISILINE is confusingly similar to Align's INVISALIGN trademark.  The marks are phonetically identical, visually similar, and create a highly similar commercial impression.  In addition, Align provides high-technology dental machines as part of the INVISALIGN system.  Many dental machines include wireless antennas.  Furthermore, doctors, dentists, and orthodontists frequently purchase new technologies, and are directly involved in purchasing decisions with respect to the technologies they use in their practices.  Thus, they are likely to encounter a wide variety of high-technology products, including wireless technologies, which are now ubiquitous.  Doctors, dentists, and orthodontists familiar with Align's INVISALIGN products and services are therefore likely to be exposed to—and confused

by—Defendants' infringing use of their INVISILINE name.  Align's tens of thousands of doctors, dentists, and orthodontists (and millions of customers) associate INVISALIGN exclusively with its products and services, and hence are likely to believe that high-technology products offered under a phonetically identical mark to INVISALIGN are produced by Align or by an affiliate of Align, or are endorsed, approved or sponsored by Align.  In addition, the strength of Align's famous INVISALIGN trademark combined with Align's many and increasing technology offerings makes it more likely that consumers will expect Align's product and service offerings to expand further, increasing the likelihood of confusion.

27.  Defendants' use of INVISILINE is also likely to cause dilution by blurring and dilution by tarnishment of the famous INVISALIGN trademark.  The similarity between Defendants' INVISILINE mark and Align's famous INVISALIGN trademark will impair the distinctiveness of Align's famous INVISALIGN trademark, reduce the ability of Align's famous INVISALIGN trademark to uniquely identify Align's products and services, and reduce the selling power of Align's famous INVISALIGN trademark.

28.  In addition, the association between Align's famous INVISALIGN trademark and Defendants' INVISILINE mark, arising from the strong similarity between the marks, will harm the reputation of Align's famous INVISALIGN trademark.  For example, if Defendants' antennas experience failures, cause service interruptions or fail to operate reliably, or provide difficult or costly to maintain or replace, such experiences, or reports of such experiences, are likely to reflect negatively on Align in the minds of consumers who associate Align with Defendants based on the similarity between Defendants' INVISILINE trademark and Align's famous INVISALIGN trademark.

29.  On August 29, 2014, prior to the launch of INVISILINE in the United States, Align wrote to Radio Frequency Systems France alerting it to Align's famous INVISALIGN trademark and trademark rights, and explaining that Defendants' use of INVISILINE infringes and dilutes Align's famous INVISALIGN trademark and trademark rights.  Align requested that Radio Frequency Systems France adopt a different mark and offered to work with it to amicably resolve

the situation. Radio Frequency System France refused to adopt another mark or to alter its activities in any manner.

30. Accordingly, Defendants willfully and intentionally launched the use of INVISILINE, with knowledge that it is causing or is likely to be causing confusion by misleading and deceiving the public. Defendants also willfully and intentionally launched the use of INVISILINE with knowledge that it will be causing or is likely to be causing dilution of Align's famous INVISALIGN trademark.

## FIRST CAUSE OF ACTION

### (Unfair Competition and False Endorsement, 15 U.S.C. §§ 1114(1), 1125(a))

31. Align incorporates herein the allegations in paragraphs 1 through 30, as set forth above.

32. Align is the sole owner of the registered INVISALIGN trademark, as set forth above.

33. Align has never licensed or otherwise authorized Defendants to use INVISILINE. Align has never licensed or otherwise authorized Defendants to assert or imply any endorsement by or affiliation with Align.

34. Defendants have used INVISILINE in commerce and have applied for trademark registration for INVISILINE, without Align's consent. This use and registration are likely to cause confusion with respect to the source and origin of Defendants' products, and are likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Align with Defendants and/or the sale of their products.

35. The INVISILINE trademark is a colorable imitation of the INVISALIGN trademark and is used in connection with products that are related to those offered by Align. Such use is likely to cause confusion, to cause mistake, or to deceive.

36. Defendants have knowingly and intentionally adopted and used the trademark INVISILINE, with the intent of causing confusion and mistake and of misleading and deceiving the public generally and Align's customers in particular into generally believing that Defendants' products are associated with or endorsed by Align.

37.    Defendants' acts constitute unfair competition and false endorsement in violation of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a).

38.    As a direct and proximate result of Defendants' unlawful acts as set forth above and the false impressions created by Defendants' actions, Align has suffered and will continue to suffer injury to its business and goodwill.

39.    Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.  Align is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein.  Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

40.    Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

41.    Align has no adequate remedy at law to compel Defendants to cease their wrongful acts.  Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the infringing use of INVISILINE, Align will continue to suffer irreparable harm.

42.    Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of unfair competition and false endorsement in violation of 15 U.S.C. § 1125.

**SECOND CAUSE OF ACTION**

**(Trademark Infringement, 15 U.S.C. 1114 et. seq.)**

43.    Align incorporates herein the allegations in paragraphs 1 through 42, as set forth above.

44.    Align is the sole owner of the registered INVISALIGN trademark, as set forth above.

45.     Align has never licensed or otherwise authorized Defendants to use INVISILINE. Align has never licensed or otherwise authorized Defendants to assert or imply any endorsement by or affiliation with Align.

46.     Defendants have used in commerce and have applied for trademark registration for INVISILINE as a trademark, without Align's consent.  This use and registration are likely to cause confusion with respect to the source and origin of Defendants' products and are likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Align with Defendants and/or the sale of their products.

47.     The INVISILINE trademark is a colorable imitation of the INVISALIGN trademark and is used in connection with products that are related to those offered by Align.  Such use is likely to cause confusion, to cause mistake, or to deceive.

48.     Defendants have knowingly and intentionally adopted and used the trademark INVISILINE, with the intent of causing confusion and mistake and of misleading and deceiving the public generally and Align's customers in particular into generally believing that Defendants' products are associated with or endorsed by Align.

49.     Defendants' acts constitute infringement of the INVISALIGN trademark in violation of 15 U.S.C. § 1114.

50.     As a direct and proximate result of Defendants' unlawful acts as set forth above, Align has suffered and will continue to suffer injury to its business and goodwill.

51.     Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.  Align is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein.  Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

52.     Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

53.     Align has no adequate remedy at law to compel Defendants to cease their wrongful acts.  Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the infringing use of INVISILINE, Align will continue to suffer irreparable harm.

54.     Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of infringement in violation of 15 U.S.C. § 1125.

### THIRD CAUSE OF ACTION

### (Trademark Dilution, 15 U.S.C.§ 1125(c))

55.     Align incorporates herein the allegations in paragraphs 1 through 54, as set forth above.

56.     The INVISALIGN Trademark is famous and distinctive, and is entitled to protection against dilution.

57.     Defendants commenced use of INVISILINE as a trademark and applied for trademark registration for INVISILINE long after the INVISALIGN trademark became famous.

58.     Defendants' use of INVISILINE as a trademark and their registration of INVISILINE as a trademark are likely to dilute the distinctive quality of the INVISALIGN trademark in violation of 15 U.S.C. § 1125(c).

59.     As a direct and proximate result of Defendants' unlawful acts as set forth above, Align has suffered and will continue to suffer injury to its business and goodwill.

60.     Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein.  Align is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein.  Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

61.     Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

62.     Align has no adequate remedy at law to compel Defendants to cease their wrongful acts.  Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the dilutive use of INVISILINE, Align will continue to suffer irreparable harm.

63.     Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of dilution in violation of 15 U.S.C. § 1125.

## PRAYER FOR RELIEF

Align requests the following relief as a result of the unlawful acts of Defendants described herein:

A.     A judgment in favor of Align on all of the claims for relief pleaded herein.

B.     That Defendants, and all persons and entities acting in concert with them, be preliminarily and thereafter permanently enjoined and restrained, pursuant to the Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, from using in any manner in connection with their businesses, websites, domain names, or the goods offered or sold by them, or in connection with any advertising or promotions for such businesses or goods, the INVISILINE trademark or any other trademark that is similar to the INVISALIGN trademark;

C.     An order requiring Defendants, and all persons and entities acting in concert with them, to abandon U.S. Application Serial No. 79/149929 and to preliminarily and thereafter permanently enjoined from filing any additional applications for INVISILINE or any other marks that are similar to the INVISALIGN trademark with the United States Patent and Trademark Office;

D.     An award to Align of compensatory, consequential, and statutory damages flowing from Defendants' wrongful acts, as described herein.

1     E.     An order requiring Defendants to disgorge any and all revenues, gains, profits, and

2 advantages obtained and to be obtained by Defendants as a result of Defendants' unlawful acts as

3 described herein.

4     F.     An order finding that this case is exceptional, awarding enhanced damages and

5 attorney's fees pursuant to 15 U.S.C. §1117(a).

6     G.     An order that Align may recover its costs from Defendants.

7     H.     An order awarding Align both prejudgment and postjudgment interest.

8     I.     An order for such other and further relief as the Court may deem just and

9 appropriate.

10 Dated:  July 27, 2015          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

11

12              By  _____*/s/ James M. Chdwick*_____

13                        HAROLD J. MILSTEIN
                         JAMES M. CHADWICK

14                         CHELSEAA BUSH
                         Attorneys for Plaintiff

15                         ALIGN TECHNOLOGY, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Align Technology, Inc. hereby demands a jury trial on all issues triable as of right to a jury.  Fed. R. Civ. P. 38(b).

Dated:  July 27, 2015                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By   _____
                                            /s/ James M. Chdwick
                                      HAROLD J. MILSTEIN
                                      JAMES M. CHADWICK
                                      CHELSEAA BUSH
                                      Attorneys for Plaintiff
                                      ALIGN TECHNOLOGY, INC.

-15-